[890 NYS2d 806]

Sol De Ibiza, LLC, Petitioner, v Panjo Realty, Inc., Respondent.

Civil Court of the City of New York, New York County, October 14, 2009

**APPEARANCES OF COUNSEL**

*Law Offices of Michael J. Berman & Associates, P.C.*, New York City (*Michael Berman* of counsel), for petitioner. *Welby,*

*Brady & Greenblatt, LLP*, White Plains (*Alan D. Singer* of counsel), for respondent.

**OPINION OF THE COURT**

ARTHUR F. ENGORON, J.

The relief requested in the petition is granted to the extent of (1) ordering respondent to restore petitioner to the subject premises immediately, and (2) allowing petitioner to file a notice of inquest into the amount of damages resulting from the reentry, if any, to which it is entitled pursuant to RPAPL 853.

Background

In the instant proceeding, petitioner leased from respondent commercial space, consisting of the ground floor store and basement at 52 Greene Street, New York, New York, pursuant to a "Standard Form of Store Lease" (answer, exhibit A) promulgated by "the Real Estate Board of New York, Inc." Paragraph 17 (2) thereof states, as here relevant: "Owner may . . . reenter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise . . . ."

Subsequently, the parties began to dispute whether tenant owed rent (a dispute that this court need not and does not resolve). On or about September 15, 2009 respondent mailed a rent demand to petitioner that stated that if $270,493.21 was not paid by September 25, 2009, "you will be evicted from the premises." When petitioner did not pay, respondent used "self-help" to evict petitioner by locking it out of the premises. Petitioner then commenced the instant proceeding to be restored to possession and for treble damages, alleging that respondent had no right to use "self-help," that petitioner does not owe any rent, and that even if petitioner owes any rent, the rent demand was invalid because it demanded much more money than petitioner owed.

Discussion

The question presented is whether, under the facts and circumstances here present, respondent was entitled to use "self-help" to evict petitioner. After much deliberation, this court concludes that respondent did not have the right to use "self-help" in this instance.

First, as every practitioner of landlord-tenant law is aware, Real Property Actions and Proceedings Law article 7, titled "Summary Proceeding to Recover Possession of Real Property," sets forth a detailed system whereby landlords may use legal

process to recover possession of real property from tenants. Although some cases (mostly decades-old) have held that "[t]he common-law right of re-entry is not abrogated by the statutory remedy of summary proceedings" (*Liberty Indus. Park Corp. v Protective Packaging Corp.*, 71 Misc 2d 116, 119 [Sup Ct, Kings County 1972], *affd* 43 AD2d 1020 [1974]), this court believes that the legislature intended this to be not just an "option," but, rather, the sole and exclusive remedy.

Second, RPAPL 711, before providing for "holdover" proceedings and "nonpayment" proceedings, provides as follows: "[a] tenant . . . shall not be removed from possession except in a special proceeding." "Self-help" is the antithesis of a legal proceeding. Furthermore, hornbook law holds that a lease or other contract may not override legislation. .

Third, the subject lease does not clearly provide for "self-help," a term familiar to every lawyer but not used in the lease itself. The lease gives the landlord the right to reenter *and* dispossess by summary proceedings or otherwise. Use of the term "and" implies that the right to reenter is conditional on a dispossession. The dispossession is to be by "summary proceedings or otherwise." "Otherwise" arguably refers to some other form of legal "proceeding," such as an ejectment action. For instance, a provision that stated that a person could cross the road with his "chickens, roosters, hens, ducks, geese, and other animals" might not include elephants. A clear "self-help" provision might read something like the following: "owner may use 'self-help' to evict you, by force or otherwise, without instituting a legal proceeding; alternatively, owner may institute any form of legal proceeding allowed by law."

Fourth, as a matter of public policy, a tenant should not have to fear that failure to comply with a rent demand, whether it be accurate or (as tenant here argues) outrageous, can lead to the doors being locked shut, without having first had a chance to present a legal defense to the landlord's claims and calculations. This is especially so where the alleged authority for "self-help" is buried in paragraph 17 (2) on the third page of fine print.

Despite all the reasons given above, this court does not reach this decision lightly. In *Matter of Jovana Spaghetti House v Heritage Co. of Massena* (189 AD2d 1041, 1042 [3d Dept 1993]), the court sustained "self-help" pursuant to a lease that provided as follows: "[landlord] shall have the right to . . . re-enter the Premises and remove [tenant] . . . by any suitable action or proceeding at law *or otherwise*."

Although this provision is somewhat similar to the subject one, there is at least one difference. In *Jovana* the landlord reentered the premises after the lease terminated due to the tenant's breach of a condition subsequent. In the matter at hand, there was no such termination of the tenancy prior to the landlord's reentry.

Interestingly, *Jovana* is cited in 49 Am Jur 2d, Landlord and Tenant § 829:

> "Under the 'English rule,' a landlord need not use legal process to expel from the premises a tenant who has no right to continue in possession as long as the landlord uses only reasonably necessary force. A variation of the rule permitting the landlord's self-help allows the landlord to gain possession from an overstaying tenant peacefully, but requires resorting to legal process if force would have been necessary [footnote 2 referenced here]. Most common, however, is the modern rule that a landlord entitled to possession must resort to the remedy that the law provides to secure the leased premises when the tenant refuses to surrender them. However, some jurisdictions, viewing the landlord's statutory remedy as merely cumulative, have not abolished the common-law remedy of self-help."

*Jovana* is cited in footnote 2. As noted in the text, most jurisdictions do not allow "self-help." In the final analysis, *Jovana*, if it cannot be distinguished as above, should be viewed, in this court's humble opinion, as an aberration. In New York City commercial landlords commence numerous nonpayment proceedings every day. Could they all be ignoring the simple expedient of changing locks if it was legally available? Or are they being guided by the thinking in *Moran v Orth* (36 AD3d 771, 773 [2d Dept 2007] ["Although Moran failed to pay rent, Orth was not entitled deliberately to resort to self-help"]). Although *Moran* does not discuss the parties' lease (which might even have been oral), it is certainly more in tune with the landlord tenant world in New York City than is *Jovana*. (*See Harley of N.Y. Assoc. v Republic 42nd St. Garage Corp.*, NYLJ, Mar. 22, 2000, at 28, col 2 [Civ Ct, NY County] [where Judge Kornreich expressly declined to reach the issue of whether "self-help" is available].)

In sum, this court concludes that the modern practice, the better practice, the exclusive practice, for a landlord seeking to evict a tenant is to bring a summary proceeding, at least if the

only arguable support for "self-help," a term not even used in the lease itself, is buried on the third page of the subject lease and is stated in equivocal, archaic, legalistic terms.

Finally, at oral argument petitioner's attorney sought a hearing on the issues of whether rent ever became due and whether the rent demand was proper. Today's decision need not and does not reach those issues, which are expressly reserved for any future legal proceedings involving the instant dispute.

Conclusion

Thus, for the reasons set forth herein, respondent is hereby ordered to restore petitioner to the subject premises immediately, and petitioner may file a notice of inquest into the amount of damages resulting from the reentry, if any, to which it is entitled pursuant to RPAPL 853.